2

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

FAMILY DIVISION

CASE NO. 04-23562 FC-12

IN RE: THE MARRIAGE OF *

VANESSA HERNANDEZ, *

Petitioner-Wife, *

and *

HARVEY HERNANDEZ, *

Respondent-Husband. *

***FINAL JUDGMENT OF***
***DISSOLUTION OF MARRIAGE***

FINAL JUDGMENT

**THIS CAUSE** was before the Court for an Uncontested Final Hearing on November 14, 2005. On the evidence presented, it is

**ORDERED:**

1. **JURISDICTION:** This Court has jurisdiction over the parties and the subject matter of these proceedings.

2. **DISSOLUTION OF MARRIAGE:** The bonds of marriage between the Petitioner and the Respondent are dissolved, because the marriage is irretrievably broken.

3. **CHILDREN:** The parties shall have shared parental responsibility of their two minor children: Alessandra Nicole Hernandez, born on October 10, 2002, and Harvey Rafael Hernandez, born on March 18, 2004.

4. **MARITAL SETTLEMENT AGREEMENT:** The parties' Marital Settlement Agreement, dated September 19, 2005, and attached as Exhibit "A," is

A TRUE COPY
CERTIFICATION ON LAST PAGE



EXHIBIT
B

approved and incorporated in this Judgment by reference and the parties are ordered to comply with its terms.

5. **RESERVATION OF JURISDICTION:** This Court retains jurisdiction to enforce the terms of this Final Judgment. This Court also retains jurisdiction to adjudicate and enforce the Notice and Claim of Attorneys' Charging Lien dated October 27, 2005, filed by Kutner and Associates and the Notice and Claim of Retaining Lien and Attorneys' Charging Lien dated August 23, 2005, filed by Caruana and Lorenzen, P.A.

**ORDERED** at Miami, Miami-Dade County, Florida, this 14th day of November, 2005.

JUDGE, CIRCUIT COURT

Copy furnished to:

A. J. BARRANCO, ESQUIRE
MAURICE JAY KUTNER, ESQUIRE
ALBERT G. CARUANA, ESQUIRE

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office. JAN 22 2008 AD 20
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk

3926

EJP/am (11/03/05)

# AMENDMENT AGREEMENT

This Amendment Agreement (this "Amendment") is made as of June 16, 2006, by and between **HARVEY HERNANDEZ** ("Husband") and **VANESSA HERNANDEZ** ("Wife").

## BACKGROUND

A. The parties hereto entered into a Mediated Marital Settlement Agreement dated September 19, 2005 (the "MSA"), under the terms of which Husband agreed to pay Wife certain amounts in connection with the dissolution of their marriage. To secure the Secured Obligations under the MSA, Husband delivered to Wife a Pledge and Security Agreement, dated as of October 31, 2005 and amended February 27, 2006 (the "Security Agreement"). Capitalized terms used but not defined in this Amendment shall have the meanings assigned to them in the MSA, and if not defined in the MSA, the meanings assigned to such terms in the Security Agreement.

B. The parties have agreed to amend the MSA and the Security Agreement, all as set forth below.

## AGREEMENTS

NOW THEREFORE, for good and valuable consideration (the receipt and adequacy of which are hereby acknowledged), Husband and Wife (collectively, the "Parties") agree as follows:

1. Recitals. The Parties acknowledge that the recitals contained herein are true and correct and are incorporated and made part of this Amendment.

2. Mondrian Consent. On the date hereof, Wife shall execute the consent to the New Boston transactions, in the form of Exhibit "A" hereto.

3. Payments.

3.1 Ocean Bank. On the date hereof, Husband shall pay: (a) the sum of $1,000,000 directly to Ocean Bank, to be applied solely to pay down the outstanding principal balance of the Ocean Bank line of credit (the "OB Loan") secured by a lien on Wife's home at 690 Solano Prado, Coral Gables, and (b) any interest, late fees and penalties currently due and payable on the OB Loan. Husband will pay off the OB Loan in full (including interest, late fees and other charges) no later than ninety (90) days after the date hereof. If made, Husband's payments under this Section 3.1 will satisfy his obligations under Section 14.4.2 and its subparts of the MSA.

3.2 Equitable Distribution. No later than one-hundred fifty (150) days after the date hereof, Husband shall pay Wife the sum of Two Million Five Hundred Thousand Dollars ($2,500,000). If made, this payment will satisfy Husband's obligation to pay Wife $4,000,000 pursuant to Section 14.5 of the MSA, thereby resulting in a savings of $1,500,000 to Husband; provided, however, that if Husband defaults on any of his Payment Obligations (as defined below) prior to the payment in full of all amounts due under Sections 3.1, 3.2 and 3.3 of



EXHIBIT C

this Amendment, the aforesaid $1,500,000 reduction shall be null and void, and Husband will forthwith owe the full $4,000,000 payable under Section 14.5 of the MSA (reduced only by any portion thereof previously paid to Wife).

3.3 Professional Fees. Husband acknowledges that he owes $100,000 in professional fees and costs to Wife's lawyers and accountants for enforcement costs through the date of this Amendment incurred as a result of Husband's alleged prior defaults under the MSA and Security Agreement, and costs incurred in the negotiation of this Amendment and the other documents to be provided hereunder . On the date hereof, the Husband shall pay $50,000 toward the $100,000 owed, and the Husband shall pay the balance within forty five (45) days after the date hereof. The Wife shall be solely responsible for all other professional fees and costs which have been incurred or may be due and owing to Wife's lawyers and/or accountants through the date hereof. Notwithstanding anything to the contrary contained in this Section 3.3, Husband is not agreeing to pay any additional professional fees and costs unless it is finally determined by a court of competent jurisdiction that the same are due and owing by Husband.

3.4 Child Support; Alimony. Husband shall continue to pay child support of $5000 per month as required under the MSA (the "Child Support Payment"). Husband shall continue to pay $20,000 in alimony per month (non-taxable to Wife and non-deductible to Husband - as stated in the MSA - and not to be reduced by imputed income) until he pays in full all amounts due under Sections 3.1, 3.2 and 3.3 of this Amendment.

3.5 Other Payment Obligations. Husband shall continue to pay all insurance premiums necessary to maintain the insurance required by the MSA in effect. Husband shall continue to make monthly payments on the OB Loan, and pay any interest, penalties and late fees, until the loan is paid off in full. After payment in full of all amounts due under Sections 3.1, 3.2 and 3.3 of this Amendment, alimony payments shall cease, but child support, insurance and Children's Expenses (defined below) shall continue to be paid as provided in the MSA.

3.6 Children's Expenses. Husband shall continue to fulfill his remaining financial obligations under the MSA, including obligations under Sections 22.3 and 22.4 (children's medical and dental insurance); Section 22.5 (children's summer activities); Section 22.6 (children's extracurricular activities); Section 22.7 (children's private school); and Section 22.8 (children's college education) (the aforesaid costs being collectively referred to as "Children's Expenses").

3.7 Manner of Payment. All payments required by Sections 3.2 and 3.3 of this Amendment shall be made by wire transfer of immediately available funds to the trust account of Barranco, Kircher & Vogelsang, P.A. at Gibraltar Bank, Miami. Payments required by Section 3.1 shall be made by wire transfer to Ocean Bank.

3.8 Payment Obligations Defined. All amounts required to be paid by Husband and described in Sections 3.1 through 3.4 of this Amendment are herein collectively referred to as the "Payment Obligations"; provided, however, that solely for purposes of the definition of "Payment Obligations" hereunder, the Child Support Payment shall be limited to the amount payable from the date of this Amendment through the date when the Husband has paid all the amounts due under Sections 3.1 through 3.3 (following the satisfaction of the Payment Obligations due under Sections 3.1 through 3.3, the Child Support and alimony

obligations shall continue in accordance with the terms of the MSA but shall no longer be considered Payment Obligations for purposes of this Amendment). If Husband defaults on any of such Payment Obligations and, with respect to the obligations under Section 3.4 only, such default continues beyond all cure periods provided in the MSA, all amounts payable pursuant to Sections 3.1 through 3.3 shall immediately be accelerated and payable in full, and Wife may enforce all her rights and remedies as a result of such default.

4. Additional Collateral. As additional security for Husband's Payment Obligations to Wife, and without in any way diminishing Wife's security interests pursuant to the Security Agreement (except as provided in Section 5 hereof) Husband shall, on the date hereof, execute and deliver to Wife first mortgages on two Douglas Place commercial units and one Douglas Place residential unit, and a second mortgage on Husband's primary residence. All such properties are described in Exhibit "B" hereto. Carlos Padron shall draft the mortgages, subject to approval by Luis de Armas. Husband shall be responsible for the costs of recording and documentary stamps and Carlos Padron's fees. Carlos Padron shall provide assurances, either through title opinions or insurance, that the Douglas Place commercial and residential units are delivered free and clear of liens and encumbrances, and that Husband's primary residence is free and clear of liens and encumbrances other than Commercebank's first mortgage (with a balance of $1.5 million or less). On or before the date hereof, Husband shall obtain any consent to the second mortgage on his residence which may be required from Commercebank. To insure that the Douglas Place mortgages are enforceable, all members of 100 Douglas LLC shall approve such mortgages in writing. All members of Grovenor 2202, LLC shall approve the second mortgage on the Husband's primary residence. The Wife's right to receive the Payment Obligations in full shall in no way be diminished by the failure of any of the Douglas Place commercial or residential units to sell at any particular price or within any time frame. Further, in accordance with the terms of the Security Agreement, at such time as the entity is formed, Husband hereby grants to Wife a lien on forty-nine percent (49%) of Husband's Ownership Interest in H&H Development at Mondrian LLC, the developer of the Mondrian Project.

5. Release of Collateral. On the date hereof, Wife shall release the security interest that she presently holds in the Solaris project and release her interest in shares of the Douglas Place project. On the date hereof, Wife will execute and file a UCC termination statement reflecting the above releases. In all other respects, the security interests that Wife currently holds under the Security Agreement shall remain in effect.

6. No Motions for Default by Wife. So long as Husband complies with his Payment Obligations, (a) Wife shall not pursue any motion for default or receivership, (b) Wife shall not seek to inspect or audit the records of any Company or Project, and (c) all discovery shall be stayed; provided, however, that (i) either party may file motions to enforce its rights upon a non-monetary default under the MSA or a default relating to Children's Expenses, either of which first occurs following the date of this Amendment and which continues beyond all applicable notice and cure periods under the MSA, and (ii) Wife may solely seek the remedy of specific performance (but no other remedies, including, without limitation, acceleration, damages, foreclosure or the right to a receiver) in the event Husband pledges or transfers the Collateral in breach of the Security Agreement or fails to provide any additional pledges in any After-Acquired Property to the extent required under the MSA or Security Agreement.

7. Releases. Once Husband pays all amounts due under Sections 3.1 through 3.3 above, Wife shall terminate the Security Agreement, release all her liens under the Security Agreement, file UCC termination statements, deliver all original stock certificates in her possession to Husband and file satisfactions of the mortgages described in Section 4. Husband agrees to pay for the actual out of pocket governmental filing fees required in connection with the filing and/or recording of such releases of liens, satisfactions and termination statements, and Wife shall be responsible for paying her own attorneys' fees and costs and other expenses incurred to prepare such releases, satisfactions and termination statements.

8. Dismissal of Pending Motions. The Wife shall immediately withdraw all pending motions with respect to the MSA, Security Agreement and/or otherwise filed in connection with the dissolution of marriage, without prejudice with respect to future defaults by Husband (but subject to the provisions of paragraph 6 of this Amendment).

9. No Defaults. Husband and Wife acknowledge and agree that as of the date hereof neither Husband nor Wife are in default under the MSA, Security Agreement or any other document executed and delivered in connection therewith. Furthermore, Husband and Wife hereby voluntarily and knowingly waive any prior defaults under the MSA, Security Agreement or any other document executed and delivered in connection therewith.

10. No Other Amendment. The MSA continues to govern all issues not covered in this Amendment (such as visitation, school expenses, etc.). Except as expressly amended hereby, the MSA and the Security Agreement shall remain in full force and effect and are hereby confirmed and ratified by the Parties. No party is released from any obligations in the MSA or the Security Agreement unless expressly provided herein. The provisions of this Amendment shall supersede and control over any contrary provisions of the MSA and the Security Agreement.

11. Binding Effect on Successors; Attorney's Fees; Law. This Agreement shall be binding on, and inure to the benefit of, the assigns, heirs, executors and administrators of the respective parties. In the event of any litigation arising under this Agreement, the prevailing party shall be entitled to recover, from the non-prevailing party, the reasonable attorney's fees and court costs incurred by the prevailing party. This Agreement shall be interpreted and construed in accordance with the laws of the State of Florida.

12. Further Assurances. From and after the date hereof, each party shall execute and deliver or cause to be executed and delivered to the other party or parties such documents, instruments or agreements, in addition to those expressly required by this Agreement, as may be reasonably required in order to implement or give effect to the agreements and transactions contemplated by this Agreement.

13. Counterparts. This Amendment may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Amendment shall be accepted, effective and binding, for all purposes, when the parties shall have signed and transmitted to each other, by telecopier or otherwise, copies of the signature pages hereto.

14. Miscellaneous. This Amendment, the MSA and the Security Agreement represent the final agreement of the Parties, and all prior and contemporaneous discussions, understandings and agreements regarding the subject matter hereof are merged herein. This Amendment may not be modified except in writing executed by all of the Parties. No ambiguity in any provision hereof shall be construed against a party by reason of the fact it was drafted by such party or his or her counsel. Time shall be of the essence for all purposes hereunder. HUSBAND AND WIFE EACH HEREBY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AMENDMENT.

IN WITNESS WHEREOF, the Parties have duly executed this Amendment as of the date first indicated above.

**HUSBAND:**

______________________________
Harvey Hernandez

**WIFE:**

______________________________
Vanessa Hernandez

14. Miscellaneous. This Amendment, the MSA and the Security Agreement represent the final agreement of the Parties, and all prior and contemporaneous discussions, understandings and agreements regarding the subject matter hereof are merged herein. This Amendment may not be modified except in writing executed by all of the Parties. No ambiguity in any provision hereof shall be construed against a party by reason of the fact it was drafted by such party or his or her counsel. Time shall be of the essence for all purposes hereunder. HUSBAND AND WIFE EACH HEREBY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AMENDMENT.

IN WITNESS WHEREOF, the Parties have duly executed this Amendment as of the date first indicated above.

**HUSBAND:**

______________________________
Harvey Hernandez

**WIFE:**

______________________________
Vanessa Hernandez