UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                                   Chapter 7

HARVEY HERNANDEZ,

            Debtor(s).                  Case No. 10-26989-BKC-RAM

_____/

SONEET KAPILA, CHAPTER 7 TRUSTEE     Adv. Case No. _____
FOR THE ESTATE OF HARVEY HERNANDEZ,

           Plaintiff,

v.

MH REAL ESTATE HOLDINGS, LLC, a
Florida limited liability company, MH REAL
ESTATE HOLDINGS GROUP I, LLC, a Florida
limited liability company, MH REAL ESTATE
HOLDINGS GROUP II, LLC, a Florida limited
liability company, MH REAL ESTATE HOLDINGS
GROUP III, LLC, a Florida limited liability company,
REF BROWARD, LLC, a Florida limited liability
company, H&H DEVELOPMENT CO., a Florida
corporation, REAL ESTATE ADVISORS, INC., a
Florida corporation, TB EQUITY HOLDINGS,
LLC, a Florida limited liability company, and
BEAUFORT ADVISORS, LTD., a British Virgin
Islands corporation,

           Defendants.

_____/

**TRUSTEE'S COMPLAINT FOR DECLARATORY JUDGMENT TO DETERMINE THE
VALIDITY AND EXTENT OF INTERESTS IN CERTAIN REAL PROPERTY,
CONSTRUCTIVE TRUST, TURNOVER, RECOVERY OF FRAUDULENT
TRANSFERS, AND ALTER- EGO**

Soneet Kapila, as Chapter 7 Trustee (the ***"Trustee"***) for the estate of Harvey Hernandez

(the ***"Debtor"***), by and through his undersigned counsel, sues Defendants MH Real Estate, LLC,

MH Real Estate Holdings, LLC, MH Real Estate Holdings Group I, LLC, MH Real Estate

Holdings Group II, LLC, MH Real Estate Holdings Group III, LLC, REF Broward, LLC, H&H

Development Co., Real Estate Advisors, Inc., TB Equity Holdings, LLC, and Beaufort Advisors, Ltd., pursuant to, amongst other things, 28 U.S.C. § 157(b)(2), 2201(a) and 2202, and Fed. R. Bankr. P. 7001(2) and (9), 11 U.S.C. §§ 542 and 544 and 547, Florida Statutes 726.105, 725.106, and 726.108, and in support states as follows:

### Jurisdiction, Venue and Parties

1.      This is an Adversary Proceeding filed pursuant to Federal Rule of Bankruptcy Procedure 7001(1) and 11 U.S.C. §§ 542 and 544 and 547, seeking turnover of property, avoidance and recovery of fraudulent transfers, constructive trust, and alter ego.

2.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H) and (O).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1409 as the Chapter 7 bankruptcy case of the Debtor is pending in this District.

4.      On June 16, 2010, Harvey Hernandez (the **"Debtor"**) filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code.

5.      The Trustee was subsequently appointed Chapter 7 trustee for the bankruptcy estate of the Debtor.

6.      MH Real Estate Holdings, LLC ("**MH Real Estate Holdings"**), is a Florida limited liability company, duly organized and existing under the laws of the State of Florida.

7.      MH Real Estate Holdings Group I, LLC ("**MH Real Estate Holdings Group I**"), is a Florida limited liability company, duly organized and existing under the laws of the State of Florida.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

8.      MH Real Estate Holdings Group II, LLC (***"MH Real Estate Holdings Group II"**), is a Florida limited liability company, duly organized and existing under the laws of the State of Florida.

9.      MH Real Estate Holdings Group III, LLC (***"MH Real Estate Holdings Group III"**), is a Florida limited liability company, duly organized and existing under the laws of the State of Florida.

10.     REF Broward, LLC ("***REF Broward***"), is a Florida limited liability company, duly organized and existing under the laws of the State of Florida.

11.     H&H Development Co. (***"H&H Development"***), is a dissolved Florida corporation, duly organized under the laws of the State of Florida.

12.     Real Estate Advisors, Inc. (***"Real Estate Advisors"***), is a Florida corporation, duly organized and existing under the laws of the State of Florida.

13.     TB Equity Holdings, LLC (***"TB Equity Holdings"***), is a Florida limited liability company, duly organized and existing under the laws of the State of Florida.

14.     Beaufort Advisors, Ltd. (***"Beaufort Advisors"***), is a British Virgin Islands corporation engaged in substantial and not isolated activity within Miami-Dade County, Florida, and is conducting and engaging in business within the State of Florida.

### General Allegations

### Background of the Debtor

15.     The Debtor is an ex-condominium developer who was very successful during the South Florida condominium boom between 2003 through 2006.

16.     H&H Development was a wholly owned corporation of the Debtor that the Debtor used to build/convert condominium projects.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

17.     In order to build or convert his condominium projects, the Debtor had to borrow funds from lenders – either in his individual name or guaranteed by him.

18.     Due to the failing real estate market in 2007 and 2008, the Debtor defaulted on numerous loans.  As a result, lenders sought to collect on their loans against the Debtor.

19.     On March 11, 1008, Regions Bank instituted an action against the Debtor and his company, 100 Douglas Apartments, LLC.  On November 26, 2008, Regions Bank obtained a Summary Final Judgment of Foreclosure in the amount of $1,425,373.86 (case no. 08-13135 CA 27).

20.     On August 13, 2008, Briarrose Invest. Ltd., instituted an action against the Debtor and his company, Bird Road, LLC.  On April 14, 2009, Briarrose Invest, Ltd., obtained a Final Default Judgment in the amount of $1,619,041.10 (case no. 08-46755 CA 27) against the Debtor.

21.     On July 3, 2008, Bank Leumi instituted an action against the Debtor and his company, Bird Road Holdings, LLC.  On October 7, 2009, Bank Leumi obtained a Final Deficiency Judgment in the amount of $1,325,743.89 (case no. 08-38483 CA 05) against the Debtor.

22.     As of January 2008, the Debtor was indebted to his ex-wife in the approximate amount of $500,000 pursuant to the terms of a divorce settlement agreement.

23.     Since at least January, 2008, the Debtor was insolvent or in the zone of insolvency.

24.     Since at least January, 2008, there was an actual unsecured creditor of the Debtor that could have avoided any of the transfers described below.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

### The Debtor Transfers Over One Million Dollars to His Uncle

25.    On March 16, 2008, the Debtor transferred $320,000 (the **"320 Transfer"**) from his individual account to his uncle, Manuel Hernandez (the **"Debtor's Uncle"**).  A copy of the check evidencing such transfer is attached as Exhibit "A."

26.    The Debtor's Uncle is a Venezuelan citizen who resides in Venezuela.

27.    On April 10, 2008, the Debtor's wholly-owned development company, H&H Development, transferred $1,100,000 (the **"1.1 Transfer"**) to the Debtor's Uncle (collectively, the 320 Transfer and the 1.1 Transfer shall be referred to as the **"Uncle Transfers"**).  A copy of the check evidencing such transfer is attached as Exhibit "B."

28.    The Debtor testified at his Rule 2004 Examination that he made the Uncle Transfers to the Debtor's Uncle to repay a loan the Debtor's Uncle had made to the Debtor so that the Debtor could pay his ex-wife.  The Debtor has never produced any loan documents to the Trustee evidencing any loans made by the Debtor's Uncle to the Debtor.

29.    In addition, the Debtor testified that he used the bank account of H&H Development to pay for his personal expenses.

30.    The Debtor had complete control over the H&H Development bank account in that he had the sole power to designate who would receive funds from that account, as well as the power to actually disburse all the funds within that account.

31.    The Uncle Transfers were deposited into a bank account in the name of the Debtor's Uncle at Eastern National Bank (the **"ENB Account"**), which was opened on March 12, 2008.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

32.     The ENB Account was opened with a $1,000 deposit by the Debtor.  In addition, the Debtor had signature authority and a full power of attorney over the ENB Account.  The relevant ENB Account documents are attached as Composite Exhibit "C."

33.     The Debtor deposited some of his income in 2008 into the ENB Account.

34.     The Debtor did not initially disclose the ENB Account on his bankruptcy schedules, despite the fact that he had a full power of authority over that account, until after the Trustee questioned the Debtor about the ENB Account at the Debtor's Rule 2004 Examination.

**Beaufort Advisors**

35.     On March 12, 2008 (the same date the ENB Account was opened), the Debtor's Uncle incorporated Beaufort Advisors in the British Virgin Islands.  A copy of the incorporation papers are attached as Exhibit "D."

36.     On April 4, 2008, an account at Merrill Lynch in Florida was opened for Beaufort Advisors (the "Merrill Lynch Account").  Once again, the Debtor had a full power of attorney over the Merrill Lynch Account.  A copy of the relevant Merrill Lynch Account documents are attached as Composite Exhibit "E."

37.     On April 9, 2008, the Debtor's Uncle executed a Revocable Trust (the "Trust") Settlement Agreement (the "Trust Agreement").  The Trust Agreement documents were produced by Merrill Lynch and not the Debtor.  The Trust Agreement provides that the Debtor's Uncle is both the settler and trustee.  The Trust Agreement also provides that upon either the death of the Debtor's Uncle or the Debtor, whichever occurs first, that the Trust (after paying all expenses for the Trust) shall set apart and deliver the Trust res to the Harvey Hernandez Declaration of Trust dated April 9, 2008.  A copy of the Trust Agreement is attached as Exhibit "F."

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

38.     The Debtor has not produced, or listed in his bankruptcy schedules, the Harvey Hernandez Declaration of Trust dated April 9, 2008.

39.     Beaufort Advisors listed its business address in the Merrill Lynch Account opening documents at the Debtor's place of business.

40.     Thereafter, $1,100,000 was transferred from the ENB Account to the Merrill Lynch Account on May 1, 2008; and, $310,000 was transferred from the ENB Account to the Merrill Lynch Account on January 12, 2009.  A copy of the transfers are attached as Composite Exhibit "G."

41.     The Debtor did not initially disclose the Merrill Lynch Account on his bankruptcy schedules, despite the fact that he had a full power of authority over the Merrill Lynch Account. The Debtor only disclosed the Merrill Lynch Account on his bankruptcy schedules after being questioned about it at his Rule 2004 examination.

42.     At the Debtor's Rule 2004 Examination, which was taken on November 12, 2010, and at which time the Trustee had not yet received any documents regarding Beaufort Advisors' Merrill Lynch Account or had knowledge of the Debtor's full power of attorney and signature authority over the Merrill Lynch Account, the Trustee questioned the Debtor regarding Beaufort Advisors.  Below are portions of the Debtor's testimony:

Q:      Do you know whether [Beaufort] is incorporated?
A:      No idea.
Q:      Manuel Hernandez owns that company alone?
A:      No idea.

Hernandez 2004 Transcript at pg. 70:13-17.

Q:      Does Beaufort Advisors have any bank accounts in the United States of America?
A:      I'm assuming.
Q:      Do you know –
A:      I don't know.
Q:      --where?

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

A:      No I don't know where.

Hernandez 2004 Transcript at pgs. 72:2—73:1.

Q:      Do you know whether Beaufort Advisors has an account at Merrill Lynch?
A:      Yes it does.
Q:      Excuse me?
A:      I think it does.
Q:      Does Beaufort have an account at Merrill Lynch?
A:      I think it does, yes.
Q:      Do you know if that account is still open?
A:      I have no idea.
Q:      Once this money went out to Beaufort Advisors, this $1,100,000, did you receive
        any of it from Mr. Hernandez?
A:      No.

Hernandez 2004 Transcript at pg.149:10-23.

43.     On January 19, 2011, the Trustee received documents produced by Merrill Lynch
regarding the Merrill Lynch Account.  These documents evidence that the Debtor had a full
power of attorney over the Merrill Lynch Account, and more importantly, that the Debtor had
control over the funds in the Merrill Lynch Account.  For instance, the Debtor had a Visa check
card tied to the Merrill Lynch Account, which Visa check card the Debtor used between July 10,
2009 through December 31, 2010 (when the funds in the Merrill Lynch Account were virtually
depleted) on every imaginable personal expense – from consistently dining at expensive
restaurants to purchasing luxury goods.  Notably, the Debtor's Uncle did not have a Visa check
card tied to the Merrill Lynch Account.

44.     Despite the Debtor's testimony at his Rule 2004 Examination, he actually used his
Visa check card tied to the Merrill Lynch Account during the month of November 2010 (the
month of his Rule 2004 Examination).

45.     In addition, the Debtor testified that he knew Beaufort Advisors had lent some
monies, but he did not know to whom.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

46.    The Debtor testified at his Rule 2004 Examination as follows:

Q:    Okay.  Has Beaufort Advisors ever - - is Beaufort Advisors in the business of lending money?
A:    I know that he [Mr. Hernandez] has lent money through Beaufort, but I don't know what is the main - -
Q:    Who has he lent money to Beaufort - - who has he lent money to through Beaufort?
A:    I don't know.  I mean, I know that he has lent money through Beaufort, but I don't know, I cannot tell you exactly to who.

Hernandez 2004 Transcript at pg. 71:7-15.

47.    The Debtor lied at his Rule 2004 Examination regarding his knowledge of Beaufort Advisors.

48.    The Debtor controls, and has always controlled, Beaufort Advisors and its Merrill Lynch Account in that he had the power to designate who would receive funds from that account, as well as the power to actually disburse all the funds within that account.

## The Solution Group

49.    The Solution Group ("**TSG**") is owned by Raul de Varona ("**Mr. Varona**") and Camilo Lopez ("**Mr. Lopez**").

50.    TSG is in the business of purchasing and selling distressed properties.  TSG either creates an entity that is capitalized by investor funds and owned by such investors, which in turn purchases distressed properties that TSG consults on and manages; or, creates an entity that it owns (usually with an investor) in which the investor loans money to that entity to purchase distressed properties.

51.    Since 2009, the Debtor, through Real Estate Advisors, has allegedly been a consultant for TSG.  As payment for his consulting services, TSG pays the Debtor a salary and his health insurance, although it is not actually known how much the Debtor is paid and what benefits the Debtor receives.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

52.    Real Estate Advisors is the Debtor's wholly-owned company which was incorporated on January 16, 2009, and from which date he has paid a majority, if not all, of his personal expenses.

53.    Between January 2010 and August 2010, TSG ran its payroll for its employees through Real Estate Advisors.  In other words, TSG would deposit monies into Real Estate Advisor's bank account which monies would then be used to pay TSG's employees.

54.    In addition, TSG held the Debtor out as its "Chairman of the Board" on its website until the Trustee questioned the Debtor about his involvement in TSG, after which TSG's website was changed.  A copy of TSG's website page stating the Debtor is its Chairman of the Board is attached as Exhibit "H."[1]

### MH Real Estate Holdings

55.    MH Real Estate Holdings is a company allegedly owned by Mr. Lopez and managed by TSG.

56.    On September 1, 2009, Beaufort Advisors allegedly made a loan to MH Real Estate Holdings in the amount of $1,750,000 (the *"Loan"*).

57.    At the time of the Loan, the Loan was the biggest investment/loan TSG or Mr. Lopez had received in furtherance of TSG's business.

58.    The Loan is evidenced by a promissory note (the *"Note"*).  The Note was produced by TSG months after the Rule 2004 examinations of the Debtor and Mr. Varona, and immediately before the Rule 2004 Examination of Mr. Lopez on February 23, 2011.

59.    Mr. Lopez, the alleged signatory on the Note, testified he did not recall seeing or signing the Note, but yet knows that he "probably" did sign the Note.

---

[1] Mr. Varona testified at his Rule 2004 Examination that the Debtor was not involved in any official capacity with TSG, and was merely a "consultant."

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

60.     To date, Beaufort Advisors has transferred $1,753,894 from its Merrill Lynch Account to MH Real Estate Holdings.

61.     The alleged purpose of the Loan from Beaufort to MH Real Estate Holdings was so that MH Real Estate Holdings could purchase distressed properties in Miami-Dade and Broward counties.

62.     In fact, since September 2009, MH Real Estate Holdings has purchased over 40 properties in Miami-Dade and Broward counties (the "**_MH Properties_**").

63.     MH Real Estate Holdings has sold some of the MH Properties, still owns some of the MH Properties (some of which it is collecting rent from), and has transferred some of the MH Properties to MH Real Estate Holdings Group I, II, and III, as well as to TB Equity Holdings.

64.     Attached as Exhibit "I" is a schedule which includes a list of properties that are currently owned by MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III.  The properties owned by MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III, shall be included within the definition of MH Properties.

65.     The Debtor manages the affairs of MH Real Estate Holdings, has held himself out to the public as the managing director of MH Real Estate Holdings, has the power to designate who gets paid from funds belonging to MH Real Estate Holdings, and according to Mr. Lopez, is the person that approves which properties MH Real Estate Holdings is going to purchase with Beaufort funds.  Attached as composite Exhibit "J" are numerous documents evidencing the Debtor's control of MH Real Estate Holdings.

66.     In effect, the Debtor controls MH Real Estate Holdings.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

67.     Despite such evidence, the Debtor testified at his Rule 2004 Examination (which

was taken prior to the receipt of the documents attached as Exhibit "J"):

Q:      Okay.  Have you heard of a company called MH Real Estate Holdings, LLC?
A:      Yes.
Q:      What company is that?
A:      It's a real estate company.  I mean, it's an investment company.
Q:      And who owns that?
A:      I believe it's Camilo Lopez.
Q:      Is there any – is it a coincidence that MH Real Estate Holdings, LLC, bears the
        initials of Manuel Hernandez?
A:      No, Manuel is a big investor in MH.
Q:      So, he is a big investor in MH Real Estate Holdings, LLC?
A:      Yes, but I don't think he owns the company though.
Q:      Okay, then why is Manuel a big investor in MH Real Estate Holdings, LLC?
A:      Why?
Q:      Why?
A:      I don't know why. I mean - -
Q:      So you don't know anything about that?
A:      - - because he decided to be a big investor, I mean - -
Q:      Well, I mean - -
A:      he invested in that company, which buys and sells property.
Q:      The reason I ask you is you said you were very close with him, he's like a father
        to you.  So, I'm assuming that when he would become a big investor in any
        company, you guys would have a discussion about it.  Wanted to know why he
        decided to become an investor in MH Real Estate - -
A:      No, no, you said why he was a big investor.  He's a big investor because he
        decided to be a big investor.  He thought the business was good.
Q:      What's the business of MH Real Estate Holdings - -
A:      Buy and sell - -
Q:      LLC?
A:      - - property.  I'm sorry, I didn't let you finish.
Q:      That's fair enough.
A:      I'm sorry.
Q:      How many properties does MH Real Estate Holdings, LLC own?
A:      I have no idea.
Q:      Okay.  Did Manuel Hernandez, did he invest money in MH Real Estate Holdings,
        or did he lend money to MH Real Estate Holdings?
A:      I don't know the capacity, if it's investment or a loan.

Hernandez 2004 Transcript at pgs. 75:16 – 77:17.

68.     In addition, Mr. Lopez testified as follows:

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

Q:      Let's use an example.  Let's say you find a property at a foreclosure sale for $50,000, and you say, I think this is a good property for MH Real Estate, right? Are you with me so far?
A:      Yes.
Q:      You call up someone and say we want to transfer over $50,000 into MH Real Estate account to buy this property at a foreclosure sale, is that right?
A:      No.
Q:      Somebody has to give you authority, though, correct, to release the money?
A:      Like draws.
Q:      Exactly.
A:      Yeah.
Q:      How do you get authority to make that draw?
A:      It was pretty much through Harvey.

Lopez 2004 Transcript at pgs. 139:16 – 140:9.

69.     When questioned about what the Debtor's Uncle did with the Uncle Transfers, the

Debtor testified he did not know.   Specifically, the Debtor testified at his Rule 2004

Examination:

Q:      Okay, and by the way, I skipped over it, but I'll represent that he had transferred - - "he" being Manuel Hernandez, the $320,000 also to Beaufort Advisors sometime after the transfer of the million one - - one hundred thousand dollars - - well, I know he did.  My question to you is: When he transferred all this money to Beaufort Advisors, what did he do with it all?
A:      I don't know.
Q:      You don't know, okay, but it didn't come to you?
A:      No.
Q:      You did not see any of it?
A:      No.

Hernandez 2004 Transcript at pgs. 155:14 – 156:1.

70.     Indubitably, the Debtor has been untruthful about his involvement with TSG,

Beaufort Advisors, and MH Real Estate Holdings.

## REF Broward

71.     REF Broward is owned by Mr. Lopez and New Line Investments, LLC, which in

turn is owned by Jose Boschetti (***"Mr. Boschetti"***).

72.     Mr. Boschetti is a personal friend of the Debtor and an ex-business partner.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

73.     On February 25, 2010, the Debtor transferred $125,000 from the Real Estate Advisors bank account to REF Broward (the "***REF Transfer***").  A copy of the REF Transfer is attached as Exhibit "K."

74.     The Debtor testified that he transferred the $125,000 from his Real Estate Advisors bank account to REF Broward because he owed Mr. Boschetti $195,000 from a previous real estate deal he had with Mr. Boschetti.

75.     With the $125,000, Mr. Boschetti capitalized REF Broward, which in turn purchased numerous distressed properties.

76.     In addition, Beaufort transferred via an alleged loan an additional $120,000 to REF Broward (the "***REF Loan***").  However, no such loan documentation has been produced by REF Broward or TSG.

77.     REF Broward was, and still is, allegedly managed by TSG.

78.     To date, REF Broward owns numerous properties in Miami-Dade and Broward counties (the "***REF Properties***"), a list of which properties is included in the schedule attached as Exhibit "I."

79.     The properties purchased by REF Broward with funds from New Line Investments or the Boschetti Group, LLC, are not included within the REF Properties.

## TB Equity Holdings

80.     Upon information and belief, TB Equity Holdings is owned by Kenneth Baboun and Mr. Lopez.

81.     Kenneth Baboun is a friend of the Debtor's that was recruited by the Debtor to invest into one of TSG's structures.  The structure in particular was TB Equity Holdings.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

82.     Beaufort Advisors transferred $32,000 to TB Equity Holdings, allegedly as a loan (the **"TB Loan"**).

83.     MH Real Estate Holdings, for reasons unknown, transferred $115,645, to TB Equity Holdings, as well.

84.     Upon information, Kenneth Baboun also invested his own funds into TB Equity Holdings.

85.     TB Equity Holdings used the funds received from Beaufort Advisors and MH Real Estate Holdings to purchase distressed properties in Miami-Dade and Broward counties (the **"TB Purchased Properties"**).

86.     MH Real Estate Holdings has transferred 5 properties to TB Equity Holdings for nominal consideration ($100)(the **"TB Transferred Properties"**)(collectively, the TB Transferred Properties and the TB Purchased Properties shall be referred to herein as the **"TB Equity Properties"**).

87.     The properties purchased by TB Equity Holdings with funds from Mr. Baboun are not included within the TB Equity Properties.

## Transfers of Properties

88.     Since the purchase of the MH Properties and the REF Properties, MH Real Estate Holdings and REF Broward have sold and transferred numerous properties.  Many of the transfers were for no or nominal consideration ($100).

89.     By way of example, between May 5, 2010, and September 11, 2010, MH Real Estate Holdings transferred eleven (11) properties to CAZA Investments, LLC, via quit claim deed for $100.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

90.     By way of example, REF Broward has sold no less than sixteen (16) properties since February 2010.

91.     In addition, there are numerous transfers of properties between MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, MH Real Estate Holdings Group III, REF Broward, and TB Equity Holdings.

92.     Attached as Exhibit "I" is a schedule that includes all the properties purchased by MH Real Estate Holdings, REF Broward, and TB Equity Holdings, and the status of those properties (i.e. transferred, sold, and still owned).

93.     The Trustee has performed all conditions precedent for the bringing of this lawsuit or such conditions have been waived by the Defendants.

### COUNT I - TURNOVER PURSUANT TO 11 U.S.C. §542
### (MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group IIII)

94.     The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

95.     The MH Properties were purchased with property of the estate, and therefore, are property of the estate.

96.     Pursuant to 11 U.S.C. §541, the MH Properties, and the interests therein, including rents there from, are property of the Debtor's bankruptcy estate and must be turned over.

97.     Pursuant to 11 U.S.C. §541, any and all sale proceeds from the sale of any of the MH Properties are property of the Debtor's bankruptcy estate and must be turned over.

WHEREFORE, the Trustee requests the Court to enter a judgment in favor of the Trustee and against the Defendants, jointly and severally, and direct the Defendants to turn over title to

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

all the MH Properties to Trustee, as well as any and all rents and sale proceeds from the sale of any of the MH Properties, plus interest, attorney's fees and costs, and for such other and further relief this Court deems fair and equitable.

### COUNT II - CONSTRUCTIVE FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.105(1)(b) and 726.108
### (MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III)

98.     The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

99.     The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

100.     The Uncle Transfers were made within four years of the Petition Date.

101.     The Uncle Transfers eventually were deposited into Beaufort Advisor's Merrill Lynch Account.

102.     Beaufort Advisors transferred the monies constituting the Uncle Transfers to MH Real Estate Holdings, and in certain instances, MH Real Estate Holdings transferred properties purchased with Beaufort Advisors' funds to MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III.

103.     MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III are the mediate/subsequent transferees of the Uncle Transfers.

104.     MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III exercised a degree of dominion and control over the monies constituting the Uncle Transfers, or held a beneficial right in such monies, as evidenced by the purchase and transfer of the MH Properties.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

105.    The Uncle Transfers were made by the Debtor without receiving reasonably equivalent value in exchange for such transfers.

106.    The Debtor's net assets were unreasonably small in relation to the Uncle Transfers.

107.    At the time of the Uncle Transfers, the Debtor was insolvent and would not be able to satisfy its liabilities as they came due.

108.    At the time of the Uncle Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

109.    At the time of the Uncle Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

110.    Accordingly, the Uncle Transfers may be avoided and all the MH Properties recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.105(1)(b) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against the MH Real Estate Defendants in the total amount of the Uncle Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

### <u>COUNT III - ACTUAL FRAUDULENT TRANSFERS</u>
**11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.105(1)(a) and 726.108**
**(MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III)**

111.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

112.    The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

113.    The Uncle Transfers were made within four years of the Petition Date.

114.    The Debtor made the Uncle Transfers with the actual intent to hinder, delay, and defraud creditors of the Debtor.

115.    The Uncle Transfers were made to an insider of the Debtor, namely, the Debtor's Uncle.

116.    The Debtor retained possession and control of the Uncle Transfers after the Uncle Transfers occurred.

117.    Before the Uncle Transfers were made, the Debtor had been sued or threatened with suit.

118.    The Uncle Transfers eventually were deposited into Beaufort's Merrill Lynch Account.

119.    Beaufort Advisors transferred the monies constituting the Uncle Transfers to MH Real Estate Holdings, and in certain instances, MH Real Estate Holdings transferred properties purchased with Beaufort Advisors' funds to MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III.

120.    MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III are the mediate/subsequent transferees of the Uncle Transfers.

121.    MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III exercised a degree of dominion and control over the monies constituting the Uncle Transfers, or held a beneficial right in such monies, as evidenced by the purchase and transfer of the MH Properties.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

122.    Accordingly, the Uncle Transfers may be avoided and all the MH Properties may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.105(1)(a) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against the MH Real Estate Defendants in the total amount of the Uncle Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

## COUNT IV - FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.106(1) and 726.108
### (MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III)

123.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

124.    The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

125.    The Uncle Transfers were made within four years of the Petition Date.

126.    The Uncle Transfers were made by the Debtor without receiving reasonably equivalent value in exchange for such transfers.

127.    The Debtor's net assets were unreasonably small in relation to the Uncle Transfers.

128.    At the time of the Uncle Transfers, the Debtor was insolvent and would not be able to satisfy its liabilities as they came due.

129.    The Uncle Transfers eventually were deposited into Beaufort Advisors' Merrill Lynch Account.

130.    Beaufort Advisors transferred the monies constituting the Uncle Transfers to MH Real Estate Holdings, and in certain instances, MH Real Estate Holdings transferred properties

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

purchased with Beaufort Advisors' funds to MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III.

131.    MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III are the mediate/subsequent transferees of the Uncle Transfers.

132.    MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III exercised a degree of dominion and control over the monies constituting the Uncle Transfers, or held a beneficial right in such monies, as evidenced by the purchase and transfer of the MH Properties.

133.    Accordingly, the Uncle Transfers may be avoided and all the MH Properties may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.106(1) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against the MH Real Estate Defendants in the total amount of the Uncle Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

### COUNT V - FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.106(2) and 726.108
### (MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III)

134.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

135.    The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

136.    The Uncle Transfers were made within four years of the Petition Date.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

137.    The Uncle Transfers were made to an insider of the Debtor (the Debtor's uncle) for an antecedent debt.

138.    The Debtor's net assets were unreasonably small in relation to the Uncle Transfers.

139.    At the time of the Uncle Transfers, the Debtor was insolvent and would not be able to satisfy its liabilities as they came due.

140.    At the time of the Uncle Transfers, the Debtor's Uncle had reasonable cause to believe that the Debtor was insolvent.

141.    The Uncle Transfers eventually were deposited into Beaufort Advisors' Merrill Lynch Account.

142.    Beaufort transferred the monies constituting the Uncle Transfers to MH Real Estate Holdings, and in certain instances, MH Real Estate Holdings transferred properties purchased with Beaufort Advisors' funds to MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III.

143.    MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III are the mediate/subsequent transferees of the Uncle Transfers.

144.    MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III exercised a degree of dominion and control over the monies constituting the Uncle Transfers, or held a beneficial right in such monies, as evidenced by the purchase and transfer of the MH Properties.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

145.    Accordingly, the Uncle Transfers may be avoided and all the MH Properties may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.106(1) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against the MH Real Estate Defendants in the total amount of the Uncle Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

## COUNT VI – INSIDER PREFERENCE PAYMENT
### 11 U.S.C. § 547(b) and 550
### (REF Broward)

146.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

147.    On February 25, 2010, the Debtor transferred $125,000 from his Real Estate Advisors bank account to REF Broward, previously defined as the REF Transfer.

148.    Mr. Boschetti is a personal friend of the Debtor and an ex-business partner.

149.    Mr. Boschetti is the majority owner of REF Broward.

150.    Mr. Boschetti is an insider of the Debtor.

151.    The Debtor testified that he transferred the $125,000 from his Real Estate Advisors bank account to REF Broward because he owed Mr. Boschetti $195,000 from a previous real estate deal he had with Mr. Boschetti.

152.    With the $125,000, Mr. Boschetti capitalized REF Broward, which in turn purchased numerous distressed properties

153.    The REF Transfer was made within one-year of the Petition Date.

154.    At the time of the REF Transfer, the Debtor was insolvent.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

155.    The REF Transfer enabled Mr. Boschetti, through REF Broward, to receive more than he would have received if the case were a case under Chapter 7, the REF Transfer had not been made, and Mr. Boschetti, through REF Broward, received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

156.    Accordingly, the REF Transfer is an avoidable preference to an insider pursuant to 11 U.S.C. § 547(b)(4)(B) and may be avoided and recovered for the benefit of the estate.

**WHEREFORE**, Plaintiff demands judgment against REF Broward in the total amount of the REF Transfer, together with prejudgment interest from the date of such transfer, costs, and any further relief that this Court deems just, fair and equitable.

## COUNT VII - TURNOVER PURSUANT TO 11 U.S.C. §542
### (REF Broward)

157.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

158.    The REF Broward Properties were purchased, at least in part, with property of the estate, and therefore, the interest of the Debtor in such properties are property of the estate.

159.    Pursuant to 11 U.S.C. §541, the REF Properties, including rents there from, and the Debtor's interests therein, are property of the Debtor's bankruptcy estate and must be turned over.

160.    Pursuant to 11 U.S.C. §541, any and all sale proceeds from the sale of any of the REF Properties purchased with property of the Debtor are property of the Debtor's bankruptcy estate and must be turned over.

WHEREFORE, the Trustee requests the Court to enter a judgment in favor of the Trustee and against REF Broward, and direct REF Broward to turn over title to all the REF Broward Properties purchased with property of the estate to the Trustee, as well as any and all rents and

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

sale proceeds from the sale of any of the REF Broward Properties purchased with property of the Debtor, plus interest, attorney's fees and costs, and for such other and further relief this Court deems fair and equitable.

## COUNT VIII - CONSTRUCTIVE FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.105(1)(b) and 726.108
### (REF Broward)

161.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

162.    The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

163.    The Uncle Transfers were made within four years of the Petition Date.

164.    The Uncle Transfers eventually were deposited into Beaufort's Merrill Lynch Account.

165.    Beaufort transferred $120,000 from the monies constituting the Uncle Transfers to REF Broward (previously defined as the REF Loan).

166.    REF Broward is the mediate/subsequent transferee of $120,000 of the Uncle Transfers.

167.    REF Broward exercised a degree of dominion and control over the monies constituting the REF Loan, or held a beneficial right in such monies, as evidenced by the purchase of the REF Properties.

168.    The Uncle Transfers were made by the Debtor without receiving reasonably equivalent value in exchange for such transfers.

169.    The Debtor's net assets were unreasonably small in relation to the Uncle Transfers.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

170.    At the time of the Uncle Transfers, the Debtor was insolvent and would not be able to satisfy its liabilities as they came due.

171.    At the time of the Uncle Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

172.    At the time of the Uncle Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

173.    Accordingly, the Uncle Transfers, and hence the REF Loan, may be avoided and all the REF Properties purchased with property of the estate may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.105(1)(b) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against REF Broward in the total amount of the REF Loan, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

## COUNT IX - ACTUAL FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.105(1)(a) and 726.108
### (REF Broward)

174.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

175.    The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

176.    The Uncle Transfers were made within four years of the Petition Date.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

177.    The Debtor made the Uncle Transfers with the actual intent to hinder, delay, and defraud creditors of the Debtor.

178.    The Uncle Transfers were made to an insider of the Debtor, namely, the Debtor's Uncle.

179.    The Debtor retained possession and control of the Uncle Transfers after the Uncle Transfers occurred.

180.    Before the Uncle Transfers were made, the Debtor had been sued or threatened with suit.

181.    The Uncle Transfers eventually were deposited into Beaufort's Merrill Lynch Account.

182.    Beaufort transferred $120,000 from the monies constituting the Uncle Transfers to REF Broward (previously defined as the REF Loan).

183.    REF Broward is the mediate/subsequent transferee of $120,000 of the Uncle Transfers.

184.    REF Broward exercised a degree of dominion and control over the monies constituting the Uncle Transfers, or held a beneficial right in such monies, as evidenced by the purchase of the REF Properties.

185.    Accordingly, the Uncle Transfers, and hence the REF Loan, may be avoided and all the REF Properties purchased with property of the estate may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.105(1)(a) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

    **WHEREFORE**, Plaintiff demands judgment against REF Broward in the total amount of the REF Loan, together with prejudgment interest from the date of such transfers, costs, all other

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court

deems just, fair and equitable.

## COUNT X - FRAUDULENT TRANSFERS
**11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.106(1) and 726.108**
**(REF Broward)**

186.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if

fully set forth herein.

187.    The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

188.    The Uncle Transfers were made within four years of the Petition Date.

189.    The Uncle Transfers were made by the Debtor without receiving reasonably

equivalent value in exchange for such transfers.

190.    The Debtor's net assets were unreasonably small in relation to the Uncle

Transfers.

191.    At the time of the Uncle Transfers, the Debtor was insolvent and would not be

able to satisfy its liabilities as they came due.

192.    The Uncle Transfers eventually were deposited into Beaufort's Merrill Lynch

Account.

193.    Beaufort transferred $120,000 from the monies constituting the Uncle Transfers

to REF Broward (previously defined as the REF Loan).

194.    REF Broward is the mediate/subsequent transferees of the Uncle Transfers.

195.    REF Broward exercised a degree of dominion and control over the monies

constituting the REF Loan, or held a beneficial right in such monies, as evidenced by the

purchase of the REF Properties.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

196.     Accordingly, the Uncle Transfers, and hence the REF Loan, may be avoided and all the REF Properties purchased with property of the estate may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.106(1) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against REF Broward in the total amount of the Uncle Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

### COUNT XI - FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544(b) and 550, Fla. Stat. §§ 726.106(2) and 726.108
### (REF Broward)

197.     The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

198.     The Uncle Transfers constituted a transfer of an interest in property of the Debtor.

199.     The Uncle Transfers were made within four years of the Petition Date.

200.     The Uncle Transfers were made to an insider of the Debtor (the Debtor's uncle) for an antecedent debt.

201.     The Debtor's net assets were unreasonably small in relation to the Uncle Transfers.

202.     At the time of the Uncle Transfers, the Debtor was insolvent and would not be able to satisfy its liabilities as they came due.

203.     At the time of the Uncle Transfers, the Debtor's Uncle had reasonable cause to believe that the Debtor was insolvent.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

204.    The Uncle Transfers eventually were deposited into Beaufort's Merrill Lynch Account.

205.    Beaufort transferred the monies constituting the REF Loan to REF Broward.

206.    REF Broward is the mediate/subsequent transferees of the Uncle Transfers.

207.    REF Broward exercised a degree of dominion and control over the monies constituting the REF Loan, or held a beneficial right in such monies, as evidenced by the purchase of the REF Properties.

208.    Accordingly, the Uncle Transfers, and hence the REF Loan, may be avoided and all the REF Properties purchased with property of the estate may be recovered pursuant to 11 U.S.C. §544(b) and Fla. Stat. §§ 726.106(2) and 726.108, and recovered for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE**, Plaintiff demands judgment against REF Broward in the total amount of the Uncle Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in § 726.108, Fla. Stat. and 11 U.S.C. § 550, and any further relief that this Court deems just, fair and equitable.

### COUNT XII – DECLARATORY RELIEF TO DETERMINE DEBTOR'S INTEREST IN AND TO THE REAL PROPERTIES
**(MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III, REF Broward, TB Equity Holdings)**

209.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

210.    Based upon the foregoing, the Trustee believes that the MH Properties, REF Properties, and TB Properties, are assets of the Debtor under applicable law and, therefore, constitute property of the Debtor's estate over which this Court has exclusive jurisdiction.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

211.    In addition, the Trustee believes that any rents received from rentals of any such real properties likewise constitute property of the Debtor's estate over which this Court has exclusive jurisdiction.

212.    The transfer of monies in the dominion and control of the Debtor which eventually led to the purchase of the MH Properties, REF Properties, and TB Properties, as well as the personal relationships between the alleged owners of such entities and the Debtor, demonstrate that the indicia of ownership lies with the Debtor.

213.    There exists an actual controversy between the parties and a need for declaration as to whether the MH Properties, REF Properties, and TB Properties, as well as any rents collected there from, are assets of the Debtor, and thus constitute property of the estate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment declaring that the MH Properties, REF Properties, and TB Properties, as well as any rents collected there from, are assets of the Debtor and thus constitute property of the Debtor's estate over which this Court has exclusive jurisdiction, and any further relief that this Court deems just, fair and equitable.

### COUNT XIII – IMPOSITION OF CONSTRUCTIVE TRUST IN FAVOR OF THE TRUSTEE AND THE DEBTOR'S ESTATE ON THE REAL PROPERTIES, AND RENTS THERE FROM
**(MH Real Estate Holdings, MH Real Estate Holdings Group I, MH Real Estate Holdings Group II, and MH Real Estate Holdings Group III, REF Broward, TB Equity Holdings)**

214.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

215.    As set forth above, the Debtor transferred monies in his dominion and control which, after a circuitous route through three separate bank accounts, eventually led to the purchase of the MH Properties, REF Properties, and TB Properties.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

216.    In order to restore the MH Properties, REF Properties, and TB Properties to the rightful owner, and to prevent the unjust enrichment of the Debtor and any of the title owners of MH Real Estate Holdings, REF Broward, and TB Equity Holdings, with property of the estate, it is necessary for the Court to impose a constructive trust in favor of the Trustee and the Debtor's estate on the MH Properties, REF Properties, and TB Properties, and any rents collected with respect to the rentals of such properties.

217.    Based upon information and belief, it would be against equity for either MH Real Estate Holdings, REF Broward, and TB Equity Holdings to retain any of their respective properties purchased with assets belonging to the Debtor because those properties were obtained by either Debtor monies, fraud, or other questionable means.

218.    The MH Properties, REF Properties, and TB Properties are readily identifiable by the Court, namely, the properties set forth on Exhibit "I" attached hereto, as well as any rents collected there from.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment declaring that the MH Properties, REF Properties, and TB Properties, as well as any rents collected there from, are subject to a constructive trust in favor of the Trustee over which this Court has exclusive jurisdiction, and any further relief that this Court deems just, fair and equitable.

## COUNT XIV – ALTER EGO
### (Real Estate Advisors)

219.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

220.    Real Estate Advisors was incorporated by the Debtor on January 16, 2009.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

221.    Since the inception of Real Estate Advisors, the Debtor has deposited all of his income into the bank account of Real Estate Advisors and paid a majority of his personal expenses through Real Estate Advisors.

222.    The Debtor is, and has always been, the sole owner/stockholder of Real Estate Advisors.

223.    The corporate form of Real Estate Advisors was used fraudulently or for the purpose of perpetrating a fraud upon all the Debtor's creditors.

224.    At all times, the Debtor had domination and control over Real Estate Advisors and its assets.

225.    Real Estate Advisors is a mere instrumentality of the Debtor used by the Debtor to shield his assets from his creditors.

226.    To the extent that Real Estate Advisors has had corporate assets, those assets were used and depleted by the Debtor for his personal benefit.  Examples of such personal benefit are the 320 Transfer to the Debtor's Uncle and the REF Transfer.

227.    Real Estate Advisors is the alter-ego of the Debtor and therefore its corporate formality may be disregarded.

228.    Equity dictates that the Debtor should not be allowed to deposit income (from both actual work and from sales of assets) into Real Estate Advisors' bank account to then transfer such income to insider's such as the Debtor's Uncle and REF Broward, and in the case of the Debtor's Uncle, the Debtor having dominion and control for his own personal benefit over the funds transferred to the Debtor's Uncle, while at all times being shielded from his creditors.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment declaring that at all material times Real Estate Advisors was the alter ego of the Debtor

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

and that any transfers of property by Real Estate Advisors are property of the estate over which this Court has exclusive jurisdiction, and any further relief that this Court deems just, fair and equitable.

### COUNT XV – ALTER EGO
### (H&H Development Corp.)

229.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

230.    H&H Development Corp. was incorporated by the Debtor on March 11, 2002.

231.    H&H Development Corp. was used by the Debtor to run his development business.

232.    Sometime in late 2007 or early 2008, the Debtor began to use H&H Development Corp. for his own personal benefit.

233.    For instance, the Debtor used funds belonging to H&H Development Corp. to pay for his personal expenses, as well as to pay off certain of the Debtor's alleged creditors, such as the Debtor's Uncle by transferring to him $1,100,000 on April 10, 2008.

234.    The Debtor is, and has always been, the sole owner/stockholder of H&H Development Corp.

235.    Sometime between the end of 2007 and early 2008, the Debtor began to use the corporate form of H&H Development Corp. fraudulently or for the purpose of perpetrating a fraud upon all the Debtor's creditors.

236.    At all times, the Debtor had domination and control over H&H Development Corp. and its assets.

237.    H&H Development Corp. was a mere instrumentality of the Debtor used by the Debtor to shield his assets from his creditors.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

238.    To the extent that H&H Development Corp. has had corporate assets, those assets were used and depleted by the Debtor for his personal benefit.  Examples of such personal benefit are the 1.1 Transfer to the Debtor's Uncle.

239.    H&H Development Corp. was the alter-ego of the Debtor and therefore its corporate formality may be disregarded.

240.    Equity dictates that the Debtor should not be allowed to transfer his income or assets through H&H Development Corp.'s bank account(s) to then transfer such income or assets to pay for his personal expenses, and in one instance, to transfer $1,100,000 to his uncle (an insider), and after such transfer having dominion and control for his own personal benefit over the funds transferred to the Debtor's Uncle, while at all times being shielded from his creditors.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment declaring that at all material times H&H Development Corp. was the alter ego of the Debtor and that any transfers of property by Real Estate Advisors are property of the estate over which this Court has exclusive jurisdiction, and any further relief that this Court deems just, fair and equitable.

## COUNT XVI – ALTER EGO
### (Beaufort Advisors)

241.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

242.    On March 16, 2008, the Debtor transferred $320,000 (the 320 Transfer) from his individual account to his uncle's ENB Account.

243.    On April 10, 2008, the Debtor caused to be transferred $1,100,000 (the 1.1 Transfer) from the Debtor's H&H Development bank account to his uncle's ENB Account.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

244.    At all material times, the Debtor had a full power of attorney and dominion and control over the ENB Account.

245.    Thereafter, $1,100,000 was transferred from the ENB Account to Beaufort Advisors' Merrill Lynch Account on May 1, 2008; and, $310,000 was transferred from the ENB Account to Beaufort Advisors' Merrill Lynch Account on January 12, 2009.

246.    Since the inception of Beaufort Advisors, the corporate form of Beaufort Advisors has been used by the Debtor fraudulently or for the purpose of perpetrating a fraud upon all the Debtor's creditors.

247.    At all material times, the Debtor had a full power of attorney and dominion and control over Beaufort Advisors' Merrill Lynch Account.

248.    For instance, the Debtor used funds in Beaufort Advisors' Merrill Lynch Account to pay for his personal expenses.

249.    The Debtor controls all investments and assets of Beaufort Advisors.

250.    Beaufort Advisors is a mere instrumentality of the Debtor used by the Debtor to shield his assets from his creditors.

251.    Beaufort Advisors is the alter-ego of the Debtor and therefore its corporate formality may be disregarded.

252.    Equity dictates that the Debtor should not be allowed to transfer his income and/or assets to Beaufort Advisors, which would otherwise be available to his creditors, to be used by the Debtor to pay for his personal expenses and investments.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment declaring that at all material times Beaufort Advisors has the alter ego of the Debtor and that any transfers of property by Beaufort Advisors are property of the estate over which this

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

Court has exclusive jurisdiction, and any further relief that this Court deems just, fair and equitable.

## COUNT XVII – DECLARATORY RELIEF TO DETERMINE DEBTOR'S INTEREST IN AND TO THE REAL PROPERTIES
### (Beaufort Advisors)

253.    The Trustee reasserts the allegations set forth in paragraphs 1 through 93 as if fully set forth herein.

254.    Beaufort Advisors allegedly made a loan to MH Real Estate Holdings in the amount of $1,750,000 (the MH Loan), which Loan is evidenced by the Note.

255.    Beaufort Advisors also allegedly made a $120,000 loan to REF Broward (the REF Loan) and a $32,000 loan to TB Equity Holdings (the TB Loan)(collectively, the MH Loan, REF Loan, and TB Loan shall be referred to as the *"Beaufort Loans"*).

256.    Based upon the foregoing, the Trustee believes that the Beaufort Loans are assets of the Debtor under applicable law and, therefore, constitute property of the Debtor's estate over which this Court has exclusive jurisdiction.

257.    Based upon the foregoing, the Trustee believes that any and all repayments on the Beaufort Loans by MH Real Estate Holdings, REF Broward, and TB Equity Holdings are assets of the Debtor under applicable law and, therefore, constitute property of the Debtor's estate over which this Court has exclusive jurisdiction.

258.    The transfer of monies in the dominion and control of the Debtor which eventually led to the purchase of the MH Real Estate Properties, REF Broward Properties, and TB Equity Properties, as well as the personal relationships between the alleged owners of such entities and the Debtor, demonstrate that the indicia of Beaufort Advisors ownership lies with the Debtor.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}

259.    There exists an actual controversy between the parties and a need for declaration as to whether the Beaufort Loans constitute property of the Debtor's estate over which this Court has exclusive jurisdiction.

**WHEREFORE**, the Trustee respectfully requests that this Court enter a declaratory judgment declaring that the Beaufort Loans are assets of the Debtor and thus constitute property of the Debtor's estate over which this Court has exclusive jurisdiction, and any further relief that this Court deems just, fair and equitable.

Dated: May 4, 2011.

s/ Daniel N. Gonzalez
Daniel N. Gonzalez, Esquire
Florida Bar No. 592749
dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Soneet Kapila, Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00883366.DOC.}