**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

HARVEY HERNANDEZ,                                            Case No. 10-26989-RAM

                                                             Chapter 7

                    Debtor.
_____/
BANK LEUMI USA,                                              Adv. No.:

            Plaintiff,

v.

HARVEY HERNANDEZ,

            Defendant.
_____/

**ADVERSARY COMPLAINT FOR NON-DISCHARGE OF DEBT**
**UNDER 11 U.S.C. §§ 523(a)(2)(A) AND 523(a)(2)(B) AND FOR**
**DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(2) AND 727(a)(4)**

        Plaintiff, Bank Leumi USA ("Plaintiff"), by undersigned counsel, hereby sues the debtor

and defendant, Harvey Hernandez ("Defendant"), to determine non-dischargeability of

Defendant's debt to Plaintiff and for a denial of discharge, alleging as follows:

                    **PARTIES, JURISDICTION AND VENUE**

        1.      Plaintiff is a New York banking corporation which maintains an office at 800

Brickell Avenue, Suite 1400, Miami, Florida.

        2.      Defendant is an individual residing in Miami-Dade County, Florida.

        3.      On June 16, 2010 (the "Petition Date"), Defendant filed a voluntary petition for

relief under Chapter 7 of Title 11 of the United States Code.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), 28 U.S.C. § 1334 and other applicable law.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and (J).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

## ALLEGATIONS COMMON TO ALL COUNTS

6.      On or about January 12, 2006, Plaintiff made a loan to Bird Road Holdings, LLC ("BRH") in the principal amount of $11,200,000.00 (the "Loan").  In connection with the Loan, BRH delivered to Plaintiff that certain Credit Agreement dated January 12, 2006 ("Credit Agreement"), Promissory Note dated January 12, 2006 ("Note"), Mortgage and Security Agreement dates as of January 12, 2006 ("Mortgage"), and Assignment of Rents and Leases dated as of January 12, 2006 ("Assignment of Rents").  True and correct copies of the Credit Agreement, Note, Mortgage and Assignment of Rents are attached hereto as Composite Exhibit A and are incorporated herein by reference.[1]

7.      On or about January 12, 2006, in order to induce Plaintiff to enter into the Loan, Defendant executed and delivered to Plaintiff that certain Unlimited Guaranty dated January 12, 2006 (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as Exhibit B and is incorporated herein by reference.

8.      The provision of the Guaranty was a material inducement for Plaintiff to enter into the Loan, and Plaintiff would not have made the Loan absent the provision of the Guaranty.

9.      In making the Loan, Plaintiff relied on certain documents provided to Plaintiff by Defendant, including, *inter alia*, Defendant's Personal Financial Statement dated July 1, 2005 (the "2005 Financial Statement").  A true and correct copy of the 2005 Financial Statement,

---

[1] The Exhibits to the Complaint will be filed separately under a Notice of Filing.

redacted to comply with Federal Rule of Bankruptcy Procedure 9037(a), is attached hereto as Exhibit C and is incorporated herein by reference.

10.     The 2005 Financial Statement misrepresented Defendant's financial condition by failing to disclose certain litigation pending against Defendant.  Specifically, although Defendant asserted in the 2005 Financial Statement that he was not a defendant in any suit or legal action, the following actions were pending against Defendant as of  the date of the 2005 Financial Statement: (1) *Floridian Yacht Sales, Inc. v. Harvey Hernandez et al.*, Case No. 04-17697 CA 02, 11th Judicial Circuit in and for Miami-Dade County (the "Floridian Yacht Action"); (2) *Vanessa Hernandez v. Harvey Hernandez*, Case No. 2005-023562 FC 04, 11th Judicial Circuit in and for Miami-Dade County (the "Divorce Action"); and (3) *Sergio Blasco v. H&H Development Co., a Florida corporation and Harvey Hernandez*, Case No. 05-5903 CA 27, 11th Judicial Circuit in and for Miami-Dade County (the "Blasco Action").  At his 2004 Examination, Defendant testified that the Divorce Action resulted in a settlement involving a payout of approximately $7.5 million to the Defendant's ex-wife, Vanessa Hernandez Dolan.  In the Blasco Action, a judgment was subsequently entered against Defendant in the amount of $162,562.51, plus attorneys fees in the amount of $28,815.00.

11.     The 2005 Financial Statement overstated the amount on deposit in certain accounts held by Defendant.  Specifically, the 2005 Financial Statement represented that Defendant had $275,000 in Account No. XXXXX1906 at Ocean Bank ("Ocean Bank Account"). However, a review of the account statements for the Ocean Bank Account reveals that such account had a balance of only $907.33 as of the July 1, 2005 effective date of the 2005 Financial Statement.  In fact, the Ocean Bank Account was closed out on September 28, 2005, approximately three month's prior to Defendant's execution of the 2005 Financial Statement on

December 19, 2005.  True and correct copies of the pertinent bank statements for the Ocean Bank Account are attached hereto as Exhibit D and are incorporated herein by reference.  The 2005 Financial Statement also represented that Defendant had $25,000 in a bank account at BankAtlantic.  Defendant had no such account.

12.    The 2005 Financial Statement overstated the value of Defendant's interest in certain automobiles.  Although the 2005 Financial Statement reports unencumbered vehicles having a value of $190,000, Defendant testified at his 2004 Examination that such figure was not accurate.

13.    The 2005 Financial Statement further misrepresented Defendant's financial condition by failing to disclose significant pre-existing liabilities.  Specifically, although the 2005 Financial Statement identified a total of $0 in liabilities, Defendant had significant personal liabilities as of both the effective date and the date of execution of the 2005 Financial Statement.

14.    Although the 2005 Financial Statement is dated July 1, 2005, it was executed on December 19, 2005.  Prior to the execution of the 2005 Financial Statement, Defendant entered into a Mediated Marital Settlement Agreement ("MSA") in the Divorce Action.  A true and correct copy of the MSA is on file with the Court as Docket Entry No. 1-1 in the case *of Vanessa Hernandez-Dolan v. Harvey Hernandez*, Adv. No. 10-03606-RAM.  Pursuant to the MSA, Defendant obligated himself to, *inter alia*: (i) pay Ms. Hernandez-Dolan monthly alimony in the amount of $20,000; (ii) pay Ms. Hernandez-Dolan an equitable distribution in the amount of $4,000,000 in four annual payments of $1,000,000, commencing on August 9, 2008 and continuing until August 9, 2012; and (iii) payoff a line of credit in the approximate amount of $1,872,000 on the marital residence (which was to be retained by Ms. Hernandez-Dolan pursuant to the terms of the MSA) no later than December 9, 2007 (the "MSA Payment Obligations").

Defendant further agreed to secure the MSA Payment Obligations by, *inter alia*, Defendant's interest in Gallery Art Holdings, LLC, Dadeland Breezes, LLC, 100 Douglas LLC, BF Hospitality, LLC, Solaris at Brickell Bay LLC, 420 Hibiscus LP, Sorrento Real Estate Group, LLC, H&H Development, Inc., the Bird Road Project and Defendant's 72-foot Ferretti vessel (the "MSA Liens").  Despite the fact that the MSA was executed prior to the execution of the 2005 Financial Statement, Defendant did not make any disclosures in the 2005 Financial Statement about the MSA, MSA Payment Obligations or MSA Liens.

15.     In or around February of 2006, Defendant provided Plaintiff with a Personal Financial Statement dated February 15, 2006 (the "2006 Financial Statement").  A true and correct copy of the 2006 Financial Statement is attached hereto as Exhibit E and is incorporated herein by reference.  Similar to the 2005 Financial Statement, the 2006 Financial Statement significantly overstated Defendant's assets and significantly understated Defendant's liabilities. Plaintiff relied on the 2006 Financial Statement in continuing to fund the Loan.

16.     The 2006 Financial Statement misrepresented Defendant's financial condition by failing to disclose both the MSA Payment Obligations and the MSA Liens.

17.     The 2006 Financial Statement further misrepresented Defendant's financial condition by failing to disclose certain litigation pending against Defendant.  Specifically, at the time of execution of the 2006 Financial Statement, the Floridian Yacht Action and Blasco Action were still pending.

18.     The 2006 Financial Statement further misrepresented Defendant's financial condition by failing to disclose significant pre-existing liabilities.  Specifically, although the 2005 Financial Statement identified a total of $0 in liabilities, Defendant had significant personal liabilities as of the date of the 2007 Financial Statement.

19.     In his 2006 Financial Statement, Defendant reported a total net worth in excess of $52 million.  At his 2004 Examination, Defendant testified that this figure was not accurate.

20.     In or around February of 2007, Defendant provided Plaintiff with a Personal Financial Statement dated February 15, 2007 (the "2007 Financial Statement").  A true and correct copy of the 2007 Financial Statement is attached hereto as Exhibit F and is incorporated herein by reference.  Similar to the 2005 Financial Statement and the 2006 Financial Statement, the 2007 Financial Statement significantly overstated Defendant's assets and significantly understated Defendant's liabilities.    Plaintiff relied on the 2007 Financial Statement in continuing to fund the Loan.

21.     The 2007 Financial Statement misrepresented Defendant's financial condition by failing to disclose both the MSA Payment Obligations and the MSA Liens.

22.     The 2007 Financial Statement further misrepresented the Defendant's financial condition by, *inter alia*, overstating Defendant's income.  Specifically, the 2007 Financial Statement reported $85,000 in rental income, when, in reality, Defendant had no rental income in 2007.

23.     The 2007 Financial Statement misrepresented the value of Defendant's interest in certain companies.  By way of example and not limitation, in the 2007 Financial Statement, Defendant valued his 100% interest in Sorrento Real Estate Group ("Sorrento") at $750,0000, despite the fact that the entity had no assets.

24.     The 2007 Financial Statement also overstated the value of the Defendant's interests in certain real estate.  Although the 2007 Financial Statement reported interests in real estate with a value of $34,799,850, the Defendant admitted at his 2004 Examination that such figure was not accurate.

25.     The 2007 Financial Statement also overstated the value of Defendant's personal property.  Although the Defendant has not sold or otherwise disposed of any personal property at any time between the generation of the 2007 Financial Statement and the Petition Date, the personal property identified in the 2007 Financial Statement as having a value of $650,000 is identified in the Defendant's Schedule B as having a value of only $18,224.00.

26.     The 2007 Financial Statement further misrepresented Defendant's financial condition by failing to disclose certain litigation pending against Defendant.  Specifically, at the time of execution of the 2007 Financial Statement, the Floridian Yacht Action and the Blasco Action were still pending.  In addition, the 2007 Financial Statement failed to disclose the existence of a new lawsuit - *Appelrouth, Farah & Co., P.A. v. Harvey Hernandez*, Case No. -96-11614 CA (20), 11th Judicial Circuit in and for Miami-Dade County ("Appelrouth Action") – pending against Defendant.  In the Appelrouth Action, a judgment was entered against Defendant in the amount of $18,297.76 approximately one month after the date of execution of the 2007 Financial Statement.

27.     The 2007 Financial Statement further misrepresented Defendant's financial condition by failing to disclose significant pre-existing liabilities.  Specifically, although the 2005 Financial Statement identified a total of $0 in liabilities, Defendant had significant personal liabilities as of date of the 2007 Financial Statement.

28.     In his 2007 Financial Statement, Defendant reported a total net worth in excess of $60 million.  At his 2004 Examination, Defendant testified that this figure was not accurate.  On the Petition Date, approximately three years after providing the 2007 Financial Statement, Defendant reported a net worth of approximately *minus* seven and one-half million dollars.

29.     The above misrepresentations and omissions were material, and Plaintiff justifiably relied on them in agreeing to make the Loan.

30.     On information and belief, Defendant's material misrepresentations and omissions were made with the intent to induce Plaintiff to make the Loan and/or continue funding under the Loan.

31.     BRG defaulted in payment of the Loan by, among other things, failing to pay the monthly interest payments due on April 1st, May 1st and June 1st, 2008, by failing to pay 2007 real estate taxes for the property serving as collateral for the Loan (the "Property") and by failing to discharge or bond off a construction lien encumbering the Property.

32.     Defendant failed to perform and breached the Guaranty by failing to make payment, when due, of all amounts owed by BRH under the Note.

33.     On October 7, 2009, Plaintiff obtained a Final Deficiency Judgment against, *inter alia*, Defendant in the amount of $1,325,743.89 (the "Judgment").  True and correct copies of the Judgment, as recorded with the Miami-Dade County Recorder on November 13, 2009, and the Electronic Judgment Lien Certificate, as recorded with the Secretary of State on November 12, 2009, are attached hereto as Composite Exhibit G and are incorporated herein by reference.  To date, no payment has been made on the Judgment.

**COUNT I**

**PLAINTIFF'S CLAIM AGAINST DEFENDANT FOR**
**NON-DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(B)**

34.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 34 above, as though fully set forth herein.

35.     This is a cause of action seeking to determine that Defendant's debt to Plaintiff is not dischargeable under 11 U.S.C. § 523(a)(2)(B).

8

36.    In order to obtain the Loan and to induce Plaintiff to continue to fund under the Loan, Defendant made false and fraudulent representations to Plaintiff in writing concerning his financial condition, as is more fully set forth above.

37.    These false representations were material.

38.    Defendant knew that these representations were false at the time they were made or made them with reckless disregard for the truth.

39.    Defendant made these representations with the intent to deceive Plaintiff.

40.    Plaintiff justifiably relied on these false representations in making and continuing to fund the Loan.

41.    Plaintiff suffered monetary damages as a result of Defendant's false representations concerning his financial condition.

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Defendant, Harvey Hernandez, determining that Defendant's liability to Plaintiff under the Judgment is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), awarding costs and granting Plaintiff such other and further relief as appears just and proper.

## COUNT II

### PLAINTIFF'S CLAIM AGAINST DEFENDANT FOR
### NON-DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

42.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 34 above, as though fully set forth herein.

43.    This is a cause of action seeking to determine that Defendant's obligation under the Judgment is not dischargeable under 11 U.S.C. § 523(a)(2)(A).

44.    In the Credit Agreement, in order to induce Plaintiff to make the Loan, Defendant falsely represented to Plaintiff that Defendant would, within ten days of its occurrence, notify

9

Plaintiff of any event which has or may have a material adverse effect upon Defendant's financial condition.

45.    Defendant knew that this representation was false at the time it was made. Defendant's fraudulent intent may be evidenced by the fact that he repeatedly failed to notify Plaintiff of the occurrence of events having a material adverse effect upon Defendant's financial condition, occurring both before and after execution of the Credit Agreement, as more fully set forth above.

46.    Plaintiff justifiably relied to its detriment on the false representation in making the Loan.

47.    Plaintiff suffered monetary damages as a result of Defendant's false representations.

**WHEREFORE**, Plaintiff seeks judgment in its favor and against the Defendant, Harvey Hernandez, determining that Judgment is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), awarding costs and granting Plaintiff such other and further relief as appears just and proper.

## COUNT III

### PLAINTIFF'S CLAIM AGAINST DEFENDANT FOR
### DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(A)(2)

48.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 34 above, as though fully set forth herein.

49.    On March 12, 2008, Defendant, pursuant to a power of attorney, opened an account at Eastern National Bank - Account No. XXXXXX0906 - in the name of Manuel Hernandez (the "ENB Account").  Manual Hernandez is Defendant's uncle and resides in Venezuela.  The ENB Account was funded with a check in the amount of $1,000 from

Defendant.   True and correct copies of the relevant ENB Account documents are attached hereto as Exhibit H and are incorporated herein by reference.

50.     On March 12, 2008, the same day that the ENB Account was opened, an entity by the name of Beaufort Advisors was incorporated in the British Virgin Islands.   A copy of the incorporation documents are attached hereto as Exhibit I and are incorporated herein by reference.  Beaufort Advisors is purportedly owned 100% by Manuel Hernandez.

51.     On or about March 16, 2008, Defendant endorsed a check from his personal bank account made payable to Manuel Hernandez in the amount of $320,000.  On or about March 17, 2008, Defendant deposited this check in the ENB Account.  Copies of the relevant documents are attached hereto as Composite Exhibit J and are incorporated herein by reference.

52.     On April 4, 2008, an account at Merrill Lynch in Florida was opened in the name of Beaufort Advisors (the "ML Account").   Defendant has a full power of attorney over the Merrill Lynch Account.   True and correct copies of the relevant Merrill Lynch Account documents are attached hereto as Composite Exhibit K and are incorporated herein by reference.

53.     On April 9, 2008, Manuel Hernandez executed a Revocable Trust (the "Trust") Settlement Agreement (the "Trust Agreement").   A copy of the Trust Agreement is attached hereto as Exhibit L and is incorporated herein by reference.  The Trust Agreement documents were produced by Merrill Lynch and not the Debtor.  The Trust Agreement provides that Manuel Hernandez is both the settlor and trustee.  The Trust Agreement provides that upon either the death of Manuel Hernandez or Defendant, whichever occurs first, that the Trust (after paying all expenses for the Trust) shall set apart and deliver the Trust res to the Harvey Hernandez Declaration of Trust dated April 9, 2008.  Defendant has not produced, or listed in his Schedules, the Harvey Hernandez Declaration of Trust dated April 9, 2008.

11

54.     On or about April 10, 2008, Defendant endorsed a check from a bank account in the name of H&H Development Co., an entity owned 100% by Defendant, made payable to Manuel Hernandez in the amount of $1,100,000.  On or about April 15, 2008, Defendant deposited this check into the ENB Account.  Less than two weeks later, the sum of $1,100,000 was transferred to the ML Account.  True and correct copies of the relevant ENB Account documents are attached hereto as Composite Exhibit M and are incorporated herein by reference.

55.     On June 18, 2009, Defendant deposited checks in the total amount of $2,900, made payable to Defendant, in the ENB Account.  True and correct copies of these checks are attached hereto as Composite Exhibit N and are incorporated herein by reference.

56.     On or about August 30, 2008, Defendant endorsed a check in the amount of $5,037.11, made payable to Defendant's second ex-wife, Ximena Penuela, from the ENB Account.  A true and correct copy of this check is attached hereto as Exhibit O and is incorporated herein by reference.

57.     On or about January 12, 2009, Defendant transferred $310,000 from the ENB Account to the ML Account.  A true and correct copy of the statement for the ENB Account reflecting this wire transfer is attached hereto as Exhibit P and is incorporated herein by reference.

58.     On information and belief, Defendant has been utilizing the ML Account to secret certain funds from creditors, in excess of $1,400,000, that were funneled by Mr. Hernandez through the ENB Account.

59.     A review of the ML Account statements reveals that significant sums were transferred from the ML Account to entities known as The Solution Group Corp. ("TSG") and MH Real Estate Holdings.  As of October of 2010, TSG's website identified Defendant as its

"Chairman of the Board and Managing Director."   A true and correct printout from TSG's website is attached hereto as Exhibit Q and is incorporated herein by reference.   Plaintiff is informed and believes that these funds were utilized to purchase certain investment properties in the South Florida area through various entities for the benefit of Defendant.   These transactions occurred both before and after the Petition Date.

60.    The ML Account has a debit card issued in the name of Defendant.   Both before and after the bankruptcy filing, Defendant used the debit card to make extravagant purchases. For example, on June 11, 2010, just five days before the Petition Date, Defendant utilized the debit card to make a $19,563 purchase at Blue Nile, an online jewelry company.   Notable post-petition purchases include trips to the Dominican Republic, Colombia and Mexico, countless meals at fine restaurant and luxury clothes.

61.    Although he has a power of attorney and has been using both the ENB Account and the ML Account for personal purposes, Defendant did not initially disclose the ENB Account or the ML Account in his Schedules.   Only after the facts alleged above came to light at his 2004 Examination did Defendant amend his Schedules [C.P. # 132] to reflect these accounts. However, the Amended Schedules only reflect that Defendant has a power of attorney over, *inter alia*, the ENB Account and the ML Account.   They do not reflect the cash that Defendant has been making use of or the properties and other assets that have been acquired, both pre and post-petition, for the benefit of Defendant.

62.    Defendant's concealment of property of the debtor and property of the estate, as more fully set forth above, was done with the intent to hinder, delay and defraud creditors and the chapter 7 trustee, Soneet Kapila.

63.    At this 2004 Examination, Defendant testified that he prefers cash over checks because "at the end of the day, I mean, you know, I can use some cash and, you know, I don't have to pay taxes on that necessarily."  It appears that Defendant approached his Schedules and Statement of Financial Affairs with the same level of candor as with which he deals with the Internal Revenue Service.  This lack of disclosure constitutes cause for denial of discharge under 11 U.S.C. § 727(a)(2).

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Defendant, Harvey Hernandez, denying Defendant a discharge pursuant to 11 U.S.C. § 727(a)(2), for costs of suit and for such other and further relief as the Court deems just and proper.

## COUNT IV

### PLAINTIFF'S CLAIM AGAINST DEFENDANT FOR
### DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(A)(4)

64.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 63 above, as though fully set forth herein.

65.    As is set forth more fully in paragraphs 48-63 above, Defendant has failed to properly disclose his interest in the ENB Account and ML Account, as well as his interest in the properties and other assets acquired with funds therefrom, in his Schedules and Statement of Financial Affairs.

66.    In addition and as is discussed in greater detail in pages 6-13 of the Trustee's Complaint on file as Docket Entry No. 1 in the adversary proceeding entitled *Soneet Kapila v. MH Real Estate Holdings, LLC et al.*, Adv. No. 11-01956- RAM, the Debtor made several false oaths at his Rule 2004 Examinations.

67.    These false oaths and accounts were made knowingly and fraudulently.

14

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Defendant, Harvey Hernandez, denying Defendant a discharge pursuant to 11 U.S.C. § 727(a)(4), for costs of suit and for such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and that I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1.

**SHUTTS & BOWEN LLP**
*Attorneys for Bank Leumi USA*
1500 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 415-9873

By: *   /s/ Stephen P. Drobny   *
Stephen P. Drobny
Florida Bar No. 55732

15